UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEAN GUALILLO,

        Plaintiff,

   v.

SAN FRANCISCO POLICE
DEPARTMENT, et al.,

        Defendants.

Case No. 16-cv-05584-JSC

**SUMMARY JUDGMENT ORDER**

Re: Dkt. Nos. 33, 38, 47

Plaintiff Sean Gualillo sues the San Francisco Police Department, the City and County of San Francisco, and San Francisco police officers Milen Banegas and Brendan Caraway for false arrest and excessive force. Now pending before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims. After carefully considering the briefs and evidence submitted by the parties, and having had the benefit of oral argument on December 7, 2017, the Court grants Defendants' motion in part and denies it part as is set forth below.

    **A.**    **Plaintiff's Second, Third, Seventh, Ninth, Tenth and Twelfth Causes of Action**

Defendants' motion for summary judgment on Plaintiff's claims for *Monell* liability, intentional infliction of emotional distress, racial discrimination pursuant to California Civil Code § 51.7, and negligent hiring is GRANTED as Plaintiff has expressly waived those claims. (Dkt. No. 48 at 4:2-3.)

Plaintiff failed to address the Bane Act in his opposition brief and has therefore abandoned it. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005). Accordingly, Defendants' motion for summary judgment is granted on that claim as well.

    **B.**    **False Arrest/Imprisonment**

        **1.**    **Section 1983 False Arrest Claim (First Cause of Action)**

United States District Court
Northern District of California

1    "If an officer has probable cause to believe that an individual has committed even a very

2    minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest

3    the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). In such an instance, the

4    balancing of private and public interests is not in doubt and the arrest is constitutional. *Virginia v.*

5    *Moore*, 553 U.S. 164, 171 (2008).

6        Defendants argue Plaintiff's false arrest claim fails because based on the undisputed

7    evidence a reasonable officer could conclude that there was probable cause to arrest Plaintiff.

8    The Court agrees. Section 7.2.13 of the San Francisco Transportation Code prohibits riding a non-

9    motorized user-propelled vehicle "upon any sidewalk in any business district within the City."

10   San Francisco Transp. Code § 7.2.13. Section 7.2 establishes that the actions listed in that section

11   are prohibited, and that every violation of a prohibition therein shall be an infraction. San

12   Francisco Transp. Code § 7.2. It is undisputed that Plaintiff rode his skateboard on a public

13   sidewalk. Plaintiff testified he was riding his skateboard "on and off" depending on "how many

14   people were on the sidewalk." (Dkt. No. 36-1 at 8:11-17.) It is equally undisputed that officers

15   Banegas and Caraway saw Plaintiff ride on the sidewalk. (Dkt. Nos. 34 (Banegas Decl. ¶ 5); 35

16   (Caraway Decl. ¶ 5.) Accordingly, Plaintiff's arrest did not violate the Fourth Amendment as a

17   matter of law because Plaintiff admits he was skateboarding on the sidewalk, a crime in San

18   Francisco, and the officers witnessed it. *See Atwater*, 532 U.S. at 354.

19       Plaintiff's insistence that the "business district" requirement of § 7.2.13 is not met is not

20   persuasive. While the Code does not define "business district," the words are not ambiguous and

21   thus the plain meaning of the statutory language governs. *See Desert Palace, Inc. v. Costa*, 539

22   U.S. 90, 98 (2003). Merriam Webster's online dictionary defines "business district" to be "the

23   part of a city or town where there are many businesses." (https://www.merriam-

24   webster.com/dictionary/business%20district.) The Court takes judicial notice that the block of

25   Market Street where Plaintiff was riding his skateboard on the sidewalk—which is near the federal

26   courthouse—has many businesses and is indisputably a business district.

27       Plaintiff's reliance on Penal Code Section 853.5 is equally unpersuasive. Under that law, a

28   peace officer can only require a violator of an infraction, such as San Francisco Transportation

Code § 7.2.13, "to present . . . satisfactory [proof of identity] and to sign a written promise to appear." Cal. Penal Code § 853.5(a). Only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint may the arrestee be taken into custody. *Id.* Viewing the evidence in Plaintiff's favor, the officers never asked for Plaintiff's identification, never asked him to sign a citation, and never asked for his prints; thus, taking him into custody for the skateboard infraction was prohibited by California law. However, "'state restrictions [on arrest] do not alter the Fourth Amendment's protections,' and under federal law, 'warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution.'" *Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010) (quoting *Virginia v. Moore*, 553 U.S. 164, 176 (2008)).

Accordingly, Defendants' motion for summary judgment on Plaintiff's section 1983 false arrest claim is GRANTED.

### 2. State Law False Imprisonment (Sixth Cause of Action)

The officers did not have probable cause to book Plaintiff for the skateboarding offense in connection with his state law false imprisonment claim given that, as explained above, Penal Code § 853.5 prohibits an officer from taking an arrestee into custody for an infraction. Defendants nonetheless argue that they are entitled to summary judgment on the false imprisonment claim because the officers are immune pursuant to California Penal Code section 847(b). That statute provides that an officer cannot be liable for an arrest that was lawful or "at the time of the arrest, [the officer] had reasonable cause to believe the arrest was lawful." Cal. Penal Code § 847(b). In light of Penal Code 853.5, and viewing the evidence in the light most favorable to Plaintiff, the arrest was not lawful, and the officers could not have believed it was, because under California law the officers could not take Plaintiff into custody for the infraction.

Defendants next argue that they also had probable cause to arrest Plaintiff for resisting arrest in violation of California Penal Code § 148(a). They contend that "[a]fter Plaintiff was lawfully detained, his unreasonable refusal to provide identification, and attempts to escape police custody constituted probable cause to arrest Plaintiff for a violation of California Penal Code Section 148. (Dkt. No. 33 at 18:17-20.) Defendants' argument inexplicably ignores Plaintiff's

testimony that the officers never asked for his identification. (Dkt. No. 46-1 at 7.) Further, the third element of a Penal Code section 148 violation is that the arrestee "knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *Yount v. City of Sacramento*, 43 Cal.4th 885, 894-95 (2008). Viewing the evidence in the light most favorable to Plaintiff, a reasonable trier of fact could find that the officers did not have probable cause to believe that Plaintiff should have reasonably known that these plains-clothed individuals who attempted to take his skateboard from behind, refused to tell him why they were stopping him, never asked for his identification, refused to give him their badge numbers, only briefly flashed one badge, and then grabbed him by the throat and took him to the ground were police officers. Defendants' argument to the contrary impermissibly draws inferences in their favor. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1866-67 (2014) (per curiam).

Finally, Defendants contend that the record supports a finding as a matter of law that the officers had probable cause to arrest Plaintiff based on his resemblance to the person described in the outstanding warrant. For support they rely on *Caitlin v. City of Wheaton*, 574 F.3d 361, 365 n.4 (7th Cir. 2009). In *Caitlin*, the officers detained a person who matched the suspect. "After successfully restraining him, the defendants checked [the plaintiff's] identification, confirmed their mistake and released him." *Id.* at 364. The Seventh Circuit held that the short-lived arrest was lawful because the plaintiff physically resembled the suspect, was observed in the precise area where the officers expected to find the suspect, and was "driving the same distinctive sort of motorcycle" as the suspect. *Id.* at 365 & n.4. Here, while the officers had probable cause, or at least reasonable suspicion, to stop Plaintiff and determine if he was the person with the outstanding arrest warrant, the undisputed evidence is that as soon as they had Plaintiff in handcuffs they searched him and found his valid out-of-state photo id that showed he was not the person with the outstanding warrant. (Dkt. No. 35 (Caraway Decl. ¶ 16).) At that point the outstanding warrant did not give Defendants probable cause to take Plaintiff into custody. Defendants have not met their burden of showing they are entitled to summary judgment on the state law false imprisonment claim.

### C. Excessive Force

#### 1. Section 1983 Excessive Force Claim (First Cause of Action)

"Although we hold that Defendants were entitled to summary judgment as to [Plaintiff's] unlawful arrest claim, we are still required to determine whether, under the circumstances, the arresting officers used an unreasonable amount of force when taking [Plaintiff] into custody." *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007); see also *Beier v. City of Lewiston,* 354 F.3d 1058, 1064 (9th Cir. 2004) ("Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa.")

In assessing the objective reasonableness of a particular use of force, courts consider: (1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual" and "the government's need for that intrusion." *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011). This inquiry must be viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham *v. Conner*, 490 U.S. 386, 396 (1989).

While courts must make allowance "for the fact that police officers are often forced to make split-second judgments," *id*. at 397, "it is equally true that even where some force is justified, the amount actually used may be excessive." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). As such, because the balancing of the three factors requires sifting through disputed factual contentions and drawing inferences therefrom, summary judgment on excessive force claims should be granted sparingly. *Gregory v. County of Maui*, 523 F.3d 1103, 1106 (9th Cir. 2008). "This is because police misconduct almost always turns on a jury's creditability determinations." *Santos*, 287 F.3d at 853. The same is true here.

Defendants' motion is premised on assuming disputed facts in their favor. Defendants argue that "[h]ad Plaintiff simply provided identification to the officers as requested, they could have quickly verified that he was not the Suspect and either given him a warning not to skateboard on the sidewalk or issued him a citation." (Dkt. No. 33 at 23; s*ee also id*. (citing Plaintiff's

"failure to identify himself" in conjunction with other facts as a justification for the force used).)

However, Plaintiff testified that the officers never asked for his identification:

> Q:     At no time before you were arrested did the officers ask you for your name;
>
>        is that right?
>
> A:     No. No name, no ID checks, nothing.

(Dkt. No. 46-1 at 7.)  Defendants' argument violates a fundamental precept of summary judgment: the trial court must not weigh the evidence and instead must draw all reasonable inferences in the non-moving party's favor.  *See Tolan v. Cotton*, 134 S.Ct. 1861, 1866-67 (2014) (per curiam).

Defendants similarly argue that Officer Caraway only applied the carotid restraint because the other control holds and verbal persuasion were ineffective.  Drawing all reasonable inferences in Plaintiff's favor, however, Officer Caraway did not attempt any other holds before the carotid restraint, nor did Officer Caraway attempt verbal persuasion or warn Plaintiff that he was going to take Plaintiff down to the ground if he did not cooperate.  Further, pursuant to San Francisco Police Department policy, under these circumstances escalating the encounter with a physical hold was improper. *See Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1158 (N.D. Cal. August 3, 2009) (holding that officer's application of a carotid hold without first using less forceful options, such as verbal persuasion, violated police department policy and was excessive).

Further, the absence of any warning or an order to halt is also a factor to weigh in determining excessive force. *Deorle v. Rutherford,* 272 F.3d 1272, 1283–1284 (9th Cir. 2001). Officers should give warnings, when feasible, if the use of force in effecting seizure may result in serious injury, and the giving of a warning or failure to do so is a factor to be considered in determining the objective reasonableness of an officer's use of force. *Id.* at 1284; *see also Atkinson v. County of Tulare*, 790 F.Supp.2d 1188, 1203-1205 (E.D. Cal. May 18, 2011) (concluding that drawing all inferences in favor of plaintiff, a reasonable trier or fact could find that officers used excessive force in applying the carotid hold without warning even though the police officers believed the individual was involved in several burglaries with stolen firearms, potentially armed, and was resisting arrest).  The evidence supports a finding that the officers gave no warning before using the carotid restraint.  Officer Caraway is not entitled to summary

judgment on the excessive force claim.

Nor is Officer Banegas entitled to summary judgment on the excessive force claim. Officer Banegas sat on top of Plaintiff's stomach and attempted to restrain Plaintiff while Officer Caraway squeezed Plaintiff's neck and head in an attempt to get him to pass out. This pressure upon Plaintiff's middle area while Plaintiff's neck was being squeezed, had it been improperly administered, could have exacerbated Plaintiff's ability to breathe. While Officer Banegas did not actually administer the carotid restraint, she contributed to it by sitting on top of Plaintiff. This evidence is sufficient to allow a trier of fact to find that she, too, engaged in excessive force.

For all these reasons, and those stated on the record at oral argument, Defendants have not met their burden to show the use of force by Officers Banegas and Caraway was reasonable as a matter of law.

## 2. Qualified Immunity

Whether a government official is entitled to qualified immunity requires a two-part analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Id.* Although both the "clearly established right" and "reasonableness" inquiries are questions of law, where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. *See Lolli v. City. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003)

As discussed above, there are several disputes of material fact regarding the parties' conduct that prevent resolving summary judgment on qualified immunity grounds. Once again Defendants argue that Plaintiff failed to give them his ID; however, this is a disputed fact. Defendants also argue they attempted verbal persuasion and less forceful holds before the carotid hold; however, these facts are also disputed. These factual disputes preclude the conclusion that Defendants are entitled to qualified immunity as a matter of law.

### 3. State Excessive Force Claims

Plaintiff's remaining state law claims include assault, battery, negligence, and negligent infliction of emotional distress.

Defendants' motion for summary judgment on the battery, assault, and negligence claims is denied for the same reasons their motion on the section 1983 excessive force claim is denied. Drawing all inferences in Plaintiff's favor, a trier of fact could find that the officers' use of force was not reasonable.

The negligent infliction of emotional distress claim is dismissed as duplicative. Plaintiff may recover emotional distress damages on his negligence claim and his section 1983 claims.

### III. Defendants' Request to File Under Seal

Defendants seek to file under seal portions of the Banegas and Caraway declaration that refer to the suspect's name, the crime alert bulletin, photographs from the investigation file, and Plaintiff's medical records. (Dkt. No. 38.) Defendants argue the documents are protected as official information because: (1) the homicide case to which the crime alert refers is still open, and (2) the declarations and bulletin refer to the criminal history of a third person. Defendants further argue that Plaintiff's medical records are protected by the Federal Health Insurance Portability and Accountability Act ("HIPAA"). Defendants' motion is GRANTED. *See* Cal. Evid. Code § 1040 (disclosure of official information acquired in confidence by a public employee in the course of her duty and not open to the public is forbidden from disclosure); Cal. Penal Code § 11075 (criminal offender record information shall be restricted to that which is recorded as the result of an arrest or other initial criminal proceedings related thereto).

## CONCLUSION

Material disputes of fact require denial of Defendants' motion for summary judgment on Plaintiff's claims for unreasonable force, assault, battery, negligence, and false imprisonment. Defendants' motion is granted on Plaintiff's remaining claims: section 1983 false arrest, *Monell* liability, intentional infliction of emotional distress, racial discrimination, negligent hiring, and the Bane Act. The negligent infliction of emotional distress claim is dismissed as duplicative of Plaintiff's negligence claim. Defendants' motion to file documents under seal is granted.

Plaintiff's objections to and motion to strike facts in Defendants' declarations is denied.

This Order disposes of Docket Nos. 33, 38, and 47.

**IT IS SO ORDERED.**

Dated: December 7, 2017

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge